**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD SINGER, individually, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>  v.<br><br>REGIONAL TRANSPORTATION AUTHORITY, an Illinois Municipal Corporation; and PACE SUBURBAN BUS SERVICE, a division of the Regional Transportation Authority,<br><br>                Defendants. | Case No. _____<br><br>Judge<br>Honorable _____<br><br>Magistrate Judge<br>Honorable _____<br><br><u>JURY DEMAND</u> |

## **COMPLAINT AT LAW**

Now comes the plaintiff, RICHARD SINGER (hereinafter "plaintiff" or "Singer"), individually and on behalf of all persons similarly situated, by and through his attorneys, Scott C. Polman and Stephen A. Chareas, and files this Collective and Class Action Complaint against defendants Regional Transportation Authority and Pace Suburban Bus Service, seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105, *et seq*. ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115, *et seq*. ("IWPCA"), and all supporting regulations. The following allegations are based on personal knowledge as to plaintiff's own conduct, and on information and belief as to the acts of others.

## **JURISDICTION & VENUE**

1. This court has general federal question jurisdiction pursuant to 28 U.S.C. §1331, because plaintiff has brought a claim pursuant to the federal Fair Labor Standards

1

Act, 29 U.S.C. § 201, *et seq.* The court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391. The events giving rise to plaintiff's claims occurred within this judicial district, and defendants maintain an office and operations within this judicial district.

## PARTIES

*Plaintiff Rick Singer*

3. Plaintiff Singer is a resident of Niles, Illinois in Cook County, Illinois.

4. At all times relevant to the complaint, Singer was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and the IMWL and IWPCA.

5. Singer has been employed by Pace as a bus driver from approximately June 3, 2013 to the present (note: the term "bus driver" will hereinafter be referred to as "bus operator," as that's the term Pace uses to refer to its bus drivers).

6. Singer expressed his consent to make these claims against Pace by filing a written consent form, pursuant to 29 U.S.C. § 216(b). (See exhibit 1 for a signed copy of the consent form, attached hereto and incorporated herein by reference).

*Defendant Regional Transportation Authority ("RTA")*

7. The RTA was created in 1974 by the passage of the Regional Transportation Authority Act, 70 ILCS 3615/1.01 *et. seq.*, and the passage of a referendum contemplated by that Act.

8. The Regional Transportation Authority is a unit of local government that serves as the financial and oversight body for three operating divisions: Chicago Transit Authority (CTA), Metra, and Pace.

*<u>Defendant Pace Suburban Bus Service ("Pace")</u>*

9. Defendant Pace is the suburban bus division of the RTA operating in the Chicago metropolitan area. It was created in 1983 by the RTA Act, which established the formula that provides funding to the CTA, Metra, and Pace.

10. At all times hereinafter mentioned, defendants RTA and Pace are "employers" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and as defined under the IMWL and IWPCA.

11. At all times hereinafter mentioned, the activities of RTA and Pace constitute an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

12. Upon information and belief, defendants maintain control, oversight, and direction over its operation and employment practices.

13. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

14. Pace's annual gross volume of business exceeds $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

15. At all relevant times, Pace has maintained control, oversight, and direction over plaintiff and similarly situated employees, including timekeeping, payroll, and other employment practices that applied to these employees.

16. Pace has applied the same employment policies, practices, and procedures to all of those employed, including policies, practices, and procedures with respect to payment of regular wages and overtime compensation.

17. Pace's corporate headquarters is located at 550 West Algonquin Road, Arlington Heights, IL 60005.

## FLSA COLLECTIVE ACTION ALLEGATIONS

18. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) on behalf of himself and all similarly situated persons who work or have worked for Pace as bus operators within the last 3 years, and who elect to opt-in to this action.

19. Pace unlawfully required plaintiff and all individuals employed as bus operators, to work without paying them for all of the time that they worked, including some overtime that they should have been compensated for every hour worked in excess of 40 hours per week.

20. Plaintiff and the FLSA Collective Action members are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, among other things, all such individuals worked pursuant to Pace's previously described common pay practices and, as a result of such practices, were not paid for all of the time that they worked, which includes some overtime that they should have been compensated 1.5 times their regular rate of pay for every hour worked in excess of 40 hours per week.

21. Resolution of this action requires inquiry into common facts, including, among other things, Pace's common compensation, timekeeping, and payroll practices.

22. Plaintiff seeks to proceed as a collective action with regard to the first cause of action, pursuant to 29 U.S.C. § 216(b), on behalf of himself and the following class of persons:

> All Pace bus operators who performed uncompensated work for Pace, for the three years prior to filing their respective consent forms, through the present, and who suffered similar wage and related damages as alleged in the complaint (hereinafter the "FLSA Collective Action").

23. Pace was aware or should have been aware that the law required it to pay non-exempt employees, including plaintiff and the FLSA Collective Action members, for all of the time that they worked, which includes some overtime that they should have been compensated for every hour worked in excess of 40 hours per week, at an overtime premium of 1.5 times their regular rate of pay.

24. Upon information and belief, there are approximately 1,200-1,300 members in the FLSA Collective Action, and Pace applied the same unlawful policies and practices to its bus operators throughout the Chicago metropolitan area.

25. The FLSA Collective Action members are readily identifiable, and may be located through Pace's records, as well as the records of any payroll companies that Pace utilizes. Pace employs many FLSA Collective Action members throughout the Chicago metropolitan area. These similarly situated employees may be readily notified of this action through direct U.S. mail and/or other appropriate means, and should be allowed to opt into this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for regular and overtime compensation, liquidated damages (or alternatively, interest), and attorneys' fees and costs under the FLSA.

## FEDERAL RULE OF CIVIL PROCEDURE RULE 23
## ILLINOIS WAGE CLASS ACTION ALLEGATIONS

26. Plaintiff brings the second and third causes of action on his own behalf and as a class action, pursuant to Fed R. Civ. P. 23(a) and (b), on behalf of the following class of persons:

> All Pace bus operators who performed uncompensated work for Pace, for the three years prior to the complaint filing date, through the present, and who suffered similar wage and related damages as alleged in the complaint (hereinafter the "Illinois Wage Class").

27. The members of the Illinois Wage Class are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number can be based are presently within the sole control of Pace.

28. Upon information and belief, there are approximately 1,200-1,300 members in the Illinois Wage Class.

29. There are questions of law and fact common to the proposed Illinois Wage Class, which predominate over any questions affecting only individual Illinois Wage Class members, including, without limitation:

> a. whether Pace failed to keep accurate time records for all hours worked by the Illinois Wage Class representative and the Illinois Wage Class;
>
> b. whether Pace failed to pay proper compensation to the Illinois Wage Class representative and the Illinois Wage Class for all hours worked, including regular work-hours and those that were in excess of 40 hours per workweek, in violation of and within the meaning of the Illinois Minimum Wage Law, 820 ILCS 105;
>
> c. whether Pace failed to pay proper compensation to the Illinois Wage Class representative and the Illinois Wage Class for all hours worked, in violation of Illinois Minimum Wage Law, 820 ILCS 105;

6

      d.    the nature and extent of Illinois Wage Class-wide injury and the appropriate measure of damages sustained by the Illinois Wage Class representative;

      e.    whether Pace acted willfully or with reckless disregard in its failure to pay the Illinois Wage Class representative and the Illinois Wage Class; and

      f.    the nature and extent of class-wide injury and the measure of damages for those injuries.

30.    Plaintiff will fairly and adequately represent and protect the interests of the Illinois Wage Class members because there is no conflict between the claims of plaintiff and those of the Illinois Wage Class, and plaintiff's claims are typical of the claims of the Illinois Wage Class. Plaintiff has previous payroll experience in his career, is knowledgeable and proficient with the issues herein alleged, and was elected union steward in March 2017.

31.    Plaintiff has retained competent and skilled counsel, experienced in complex litigation, including wage and hour litigation like this one, and both attorneys have the ability, skill, and resources to manage this particular lawsuit.

32.    Further, the Illinois Wage Class representative and the Illinois Wage Class members have been equally affected by Pace's failure to pay proper wages.

33.    Pace has acted or refused to act on grounds generally applicable to the Illinois Wage Class, thereby making appropriate, any final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

34.    Plaintiff's claims are typical of those of the Illinois Wage Class. Plaintiff and the other Illinois Wage Class members were subjected to Pace's policies, practices, programs, procedures, protocols and plans alleged herein, concerning Pace's failure to pay proper wages and its failure to keep adequate records. Plaintiff's job duties are typical of those of the class members.

35. Class action treatment is superior to the alternatives, for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum, simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

36. The Illinois Wage Class is readily identifiable from Pace's own records. Prosecution of separate actions by individual members of the Illinois Wage Class would create the risk of inconsistent or varying adjudications with respect to individual Illinois Wage Class members, which would very likely establish incompatible standards of conduct for Pace.

37. A class action is superior to other available methods for adjudication of this controversy because joinder of all class members is impracticable. Further, the amounts at stake for many of the Illinois Wage Class members, while substantial, is not great enough to enable them to maintain separate suits against Pace.

38. Without a class action, Pace will retain the benefit of its wrongdoing, which will result in further damages to plaintiff and the Illinois Wage Class. Plaintiff envisions no difficulty in the maintenance and management of this action as a class action.

## **CLASS-WIDE FACTUAL ALLEGATIONS**

39. Upon information and belief, Pace engaged in a "time-shaving" policy, whereby Pace failed to pay plaintiff and members of the classes for all of the hours that they worked for Pace.

40. Plaintiff and the members of the FLSA Collective Action and Illinois Wage Class (collectively "Class Members") are victims of Pace's common policies and plans that violated their rights under the FLSA, IMWL, and IWPCA, by failing to pay proper compensation for all hours that the Class Members worked, including Pace's time-shaving from employees' hours, and failure to compensate regular and overtime hours at the proper rates, including an overtime premium for all hours worked in excess of 40 per workweek. At all relevant times, Pace's unlawful policies and patterns or practices have been willful.

41. Pace Suburban Bus Service is the foremost suburban transportation company which services customers in the Chicago metropolitan area, including the counties of Cook, Will, DuPage, Kane, Lake, and McHenry counties. One of the largest bus services in North America, Pace covers 3,446 square miles, an area nearly the size of the state of Connecticut and about 15 times the size of the City of Chicago.

42. Pace employs bus operators, including plaintiff, to perform transportation services for its customers across the aforementioned Chicago metropolitan service area.

43. At all relevant times, plaintiff was acting directly or indirectly in the interest of Pace, and therefore defendant is an "employer" within the meaning of state and federal wage laws.

44. Plaintiff and the classes are all blue-collar workers who are not subject to any of the exemptions of the FLSA, IMWL, or IWPCA.

45. Plaintiff and other Pace bus operators worked on average of around 8 or more hours per day and 5 or more days per week. Plaintiff's current hourly rate of pay is $21.57.

46. Pace instituted a policy whereby plaintiff and other Pace bus operators would fill out a "Pay Exception Slip" at the end of their shift (commonly known as a "pink slip" at the garage where plaintiff works); this pink slip would specify the amount of excess time the bus operator spent above and beyond Pace's pre-designated scheduled or budgeted time (run time), including the reason for such excess (e.g., traffic, accident, weather, etc.). (See exhibit 2 for an example of a pink slip and run sheet, attached hereto and incorporated herein by reference).

47. Pace instructed plaintiff and other bus operators to specifically refrain from putting "unrealistic schedule" as a reason for their excess time; instead, Pace insisted on employees using the term "traffic."

48. Once the pink slip was filled out, the bus operators would give the pink slip to a dispatcher, who forwarded the slip to a supervisor, who would then initial the approved excess time.

49. Singer kept detailed records of his pink slip excess time, and he estimates that Pace failed to pay him excess time of about $1,000 in earned wages over the relevant statutory time period.

50. As a transportation services company that operates throughout the Chicago metropolitan area, there is no question that Pace has access to human resources expertise and extensive legal counsel, who can duly advise Pace on its wage and hour compliance obligations.

51. During the entire relevant time period, Pace was aware that plaintiff and the classes were not properly compensated under the FLSA, IMWL, and IWCPA, because Pace did not keep accurate records of the time that plaintiff and the Class Members worked each day and week.

52. Pace has acted willfully and/or with reckless disregard of the applicable FLSA, IMWL, and IWCPA provisions, by failing to properly record hours and failing to properly compensate plaintiff and the Class Members for all of the time that they worked, including hours worked in excess of 40 during the workweek.

53. Furthermore, Pace failed to properly track, monitor, or record the actual number of hours per day that the class members worked, as required by the FLSA. *See* 29 U.S.C.A. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

## PLAINTIFF'S FACTUAL ALLEGATIONS

### *Plaintiff Rick Singer*

54. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

55. Plaintiff Rick Singer was an employee of Pace, working under its direct supervision and control.

56. Singer has been employed by Pace from approximately June 3, 2013 to the present.

57. At all times relevant to this complaint, Singer was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e), and within the meaning of both the IMWL and IWCPA.

58. Singer's paychecks failed to properly list all of his hours that he worked for Pace, and therefore Pace failed to properly compensate him for all of the hours that he worked, including any applicable overtime compensation.

59. Specifically, Singer's actual paychecks from Pace failed to accurately reflect the aforementioned "pink slip" excess time, and therefore Pace intentionally and willfully failed to pay him for all of the hours that he worked for Pace.

60. For his own personal files, information, and records, Singer made a practice of taking the data that he filled-out on the pink slips, and duplicating this data with specific notations, on his daily "trip cards."

61. A "trip card" is a pre-trip checklist that each bus operator fills out before his daily shift, and so Singer's personal calculations of unpaid excess work time, the impetus for this action, is based largely on the difference between the excess time that he worked for Pace, and corresponding shortages of actual pay that he received on his paychecks from Pace. (See exhibit 3 for an example of a trip card, attached hereto and incorporated herein by reference).

62. These shortages of pay are derived from those hours that Pace failed to properly reflect and compensate plaintiff for the aforementioned approved pink slip excess time.

63. On more than one occasion, Singer brought this pay shortage issue to the attention of Pace payroll personnel and management, and after noticing a 1-hour pay shortage on one of his checks, Singer had a conversation with Louella Morgan, administrative secretary and payroll.

64. This conversation with Morgan took place in or around January/February 2017, and to plaintiff's recollection, either superintendent Laura Lindsey or division manager Mike Cutler were present; however, Morgan ended the conversation rather abruptly, telling plaintiff something to the effect of, 'our records are right and you're wrong'—declining Singer's request to see the time sheets.

65. Article 15(e) of the Pace North Shore Division union contract states that: "employees shall be paid for all time during which they are required by Pace North Shore to perform any duties." (See exhibit 4 for the pertinent part of the contract, attached hereto and incorporated herein by reference).

66. Plaintiff and the FLSA Collective Action members are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, among other things, all such individuals worked pursuant to Pace's previously described common pay practices and, as a result of such practices, were not paid for all of the time that they were required by Pace to perform duties, including regular hours and the legally mandated overtime premium for hours worked in excess of 40 during the workweek.

**FIRST CAUSE OF ACTION**
Violation of the FLSA for unpaid regular and overtime wages
(Brought on behalf of plaintiff and the FLSA Collective Action)

67. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

68. Plaintiff and members of the FLSA Collective Action are non-exempt employees entitled to be paid regular and applicable overtime compensation for all of the hours that they worked.

69. In violation of the requirements of FLSA, 29 U.S.C. §§ 206(a)(1) and 207(a)(1), Pace employed plaintiff and members of the FLSA Collective Action for workweeks longer than 40 hours, but willfully failed to compensate plaintiff and the FLSA Collective Action members for all of the time that they worked, including time in excess of 40 hours per week, at the required rate of at least 1.5 times their regular rate of pay.

70. Pace's compensation scheme applicable to plaintiff and the FLSA Collective Action members fails to comply with 29 U.S.C. §§ 206(a)(1) and 207(a)(1).

71. Plaintiff has expressed his consent to make these claims against Pace by filing a written consent form pursuant to 29 U.S.C. § 216(b).  (See exhibit 1).

72. Pace failed to make a good faith effort to comply with the FLSA with respect to its compensation of plaintiff and the FLSA Collective Action members.

73. Because Pace's violations of the FLSA were willful, a 3-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

74. As a consequence of the willful underpayment of wages alleged above, plaintiff and members of the FLSA Collective Action incurred damages thereby, and Pace is indebted to them in the amount of the unpaid regular and overtime compensation, together with interest, liquidated damages, attorneys' fees and costs, all in an amount to be determined at trial of this action.

**SECOND CAUSE OF ACTION**
Violation of the IMWL for unpaid regular and overtime wages
(Brought on behalf of plaintiff and the members of the Illinois Wage Class)

75. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

76. Pace has employed plaintiff and members of the Illinois Wage Class and has failed to pay them for all of the time that they worked, in violation of the requirements of the IMWL.

77. Pace has employed plaintiff and members of the Illinois Wage Class for workweeks longer than 40 hours, and willfully failed to compensate plaintiff and the Illinois Wage Class for all of the time that they worked, including time in excess of 40 hours per week, at the required rate of at least 1.5 times their regular rate of pay, in violation of the requirements of the IMWL.

78. By the course of conduct set forth above, Pace has violated the IMWL.

79. Pace has failed to keep, make, preserve, maintain and furnish accurate records of time worked by plaintiff and members of the Illinois Wage Class.

80. Pace has maintained a policy and practice of failing to pay regular and overtime compensation to plaintiff and the Illinois Wage Class for all of the hours that they worked for Pace.

81. Pace's failure to pay regular and overtime compensation to plaintiff and the Illinois Wage Class was willful within the meaning of the IMWL.

82. Based on the willful underpayment of wages alleged above, plaintiff and the Illinois Wage Class incurred damages thereby, and Pace is indebted to them in the amount of the unpaid regular and overtime wages, and such other legal and equitable relief stemming from Pace's unlawful and willful conduct, as the Court deems just and proper.

83. Plaintiff, on behalf of himself and the Illinois Wage Class, also seeks recovery of liquidated damages, attorneys' fees and costs to be paid by Pace as provided by the IMWL, 820 ILCS 105/12.

**THIRD CAUSE OF ACTION**
Violation of the IWPCA for unpaid regular and overtime wages
(Brought on behalf of plaintiff and the Illinois Wage Class)

84. Plaintiff realleges and incorporate by reference all allegations in all preceding paragraphs.

85. By the course of conduct set forth above, Pace has violated the IWPCA.

86. Due to Pace's violations of the IWPCA, plaintiff and the Illinois Wage Class is entitled to recover from Pace all of their unpaid regular and overtime compensation, and such other legal and equitable relief stemming from Pace's unlawful and willful conduct, as the Court deems just and proper.

87. Plaintiff, on behalf of himself and the Illinois Wage Class, seeks recovery of liquidated damages and attorneys' fees and costs to be paid by Pace as provided by the IWPCA.

88. Due to Pace's violations of the IWPCA, and pursuant to 820 ILCS 115/14, plaintiff and the Illinois Wage Class members are entitled to recover from Pace all reasonable attorneys' fees, costs, in addition to any pre/post-judgment interest to the fullest extent as permitted under the law.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff, individually and on behalf of the Class Members, seeks the following relief:

    A. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b).

    B. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to the potential FLSA Collective Action members.

    C. An order permitting this litigation to proceed as a Rule 23 class action with respect to the Illinois Wage Class;

      D.      Back pay damages, including unpaid regular and overtime compensation, and pre-judgment and post-judgment interest to the fullest extent permitted under the law;

      E.      Liquidated damages to the fullest extent permitted under the law;

      F.      Injunctive relief to the fullest extent permitted under the law;

      G.      Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

      H.      Such other further relief as this Honorable Court deems just and proper.

Respectfully submitted,

Plaintiff Richard Singer

By: s/Scott C. Polman_____
One of his attorneys

Scott C. Polman, Esq.
Law Office of Scott C. Polman
8130 N. Milwaukee Ave.
Niles, IL 60714
email. spolman.law@comcast.net
ph. 847-292-1989
fx. 847-510-0581

Stephen A Chareas, Esq.
Stephen A Chareas, Ltd.
8034 N. Milwaukee Ave.
Niles, IL 60714
email. sacltd@sbcglobal.net
ph. 847-692-3388
fx. 847-692-0400

*__Counsel for Plaintiff Richard Singer__*