UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD SINGER, individually and on behalf of all others similarly situated, ) ) ) ) Plaintiff, ) ) vs. ) ) REGIONAL TRANSPORTATION AUTHORITY and ) PACE SUBURBAN BUS SERVICE, ) ) Defendants. ) | 18 C 199<br><br>Judge Gary Feinerman |

## MEMORANDUM OPINION AND ORDER

Richard Singer brings this putative class and collective action against Pace Suburban Bus Service and Regional Transportation Authority ("RTA"), alleging wage-and-hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq*. Doc. 2. Defendants move under Civil Rule 12(b)(6) to dismiss the complaint. Doc. 21. The motion is granted in part and denied in part, though Singer will be given a chance to replead.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC,* 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Singer's brief opposing dismissal, so long as those additional facts "are consistent with

1

the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Singer as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth those facts at the pleading stage, the court does not vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

The RTA oversees the three primary public transit systems in the Chicago metropolitan area: the Chicago Transit Authority; Metra; and Pace, which operates a bus line system serving Chicago's suburbs. Doc. 2 at ¶¶ 7-9. Singer has worked as a Pace bus driver for some five years. *Id*. at ¶ 5. On average, Singer worked at least eight hours per day, at least five days per week, at a wage of $21.57 per hour. *Id*. at ¶¶ 45, 69, 77.

Singer alleges that Pace maintains a time-shaving policy. *Id*. at ¶¶ 46-48. Pace set the schedule for every bus run and, if the actual run time exceeded the planned run time, Pace required drivers to fill out a "Pay Exception Slip" or "pink slip" giving the reasons for the delay. *Id*. at ¶ 46; Doc. 2-2. Pace instructed drivers not to list "unrealistic schedule" as a reason, and instead to attribute delays to "traffic." *Id*. at ¶ 47. Pink slips were then forwarded to a supervisor responsible for approving the excess time. *Id*. at ¶ 48.

Using his own records, Singer calculated the "shortages of actual pay" that should have been reflected in his paychecks. *Id*. at ¶¶ 49, 60-61. He alleges underpayment in the amount of approximately $1,000. *Id*. at ¶¶ 49, 58-62. Singer raised the underpayment issue with Pace's payroll personnel and management several times, including once in early 2017 after noticing a one-hour shortage on a paycheck. *Id*. at ¶¶ 63-64. Pace management refused his request to see Pace's copies of his time sheets. *Ibid*. Singer then discussed the issue with two union stewards, who felt that it would be futile to pursue a grievance. Doc. 25 at 9.

**Discussion**

I.      **FLSA and IMWL Claims**

The FLSA requires employers to pay employees "not less than … $7.25 an hour," 29 U.S.C. § 206(a)(1), and also to pay overtime at a rate "not less than one and one-half times" their regular wage, 29 U.S.C. § 207(a)(1). *See DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 735 F.3d 568, 570 (7th Cir. 2013) ("The FLSA's two core provisions—the minimum wage provision and the overtime provision—require that employees receive a minimum wage for each hour that they are 'employ[ed]' as well as a premium wage (one and one-half times the regular rate of pay) for each hour they are 'employ[ed]' beyond forty hours in one work week.") (brackets in original) (quoting 29 U.S.C. §§ 206(a), 207(a)). Singer alleges violations of both the minimum wage and overtime provisions.

As Singer all but conceded at the motion hearing, Doc. 30, his § 206(a)(1) minimum wage claim is not plausible and thus does not survive Rule 12(b)(6). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 934-35 (7th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As noted, the complaint alleges that Singer worked at least eight hours per day, at least five days per week, at a wage of $21.57 per hour, and that he was underpaid by approximately $1,000 over the relevant time frame. Doc. 2 at ¶¶ 45, 49. Those allegations do not permit the reasonable inference that his average hourly wage ever fell below the statutory minimum of $7.25. Assuming, favorably to Singer, that the underpayment occurred in the two-year limitations period governing non-willful FLSA claims, *see* 29 U.S.C. § 255(a), Singer alleges a weekly underpayment of approximately $10, or a daily underpayment of approximately

$2, nowhere near the amount necessary to bring his average hourly wage below the federal minimum. *See Hirst v. SkyWest, Inc.*, 283 F. Supp. 3d 684, 691 (N.D. Ill. 2017) (requiring a FLSA plaintiff to "plausibly allege at least one workweek for which the compensation … received, divided by [her] total compensable time, failed to meet the FLSA minimum wage of $7.25 per hour") (citing cases); *Hughes v. Scarlett's G.P., Inc.*, 2016 WL 4179153, at *3 (N.D. Ill. Aug. 8, 2016) (same).

In contrast, Singer's § 207(a)(1) overtime claim survives dismissal. "Under the FLSA, employees are entitled to overtime pay for any hours worked over forty hours per week … ." *Blanchar v. Standard Ins. Co.*, 736 F.3d 753, 756 (7th Cir. 2013); *see also Lucero v. Leona's Pizzeria, Inc.*, 2015 WL 191176, at *2 (N.D. Ill. Jan. 13, 2015) ("To state a viable FLSA overtime claim … a plaintiff must sufficiently allege forty hours of work in a given workweek as well as some uncompensated time in excess of forty hours.") (alterations and internal quotation marks omitted). Singer alleges that he was employed for "workweeks longer than 40 hours" and was not compensated "for all of the time that [he] worked, including time in excess of 40 hours per week, at the required rate of at least 1.5 times [his] regular rate of pay." Doc. 2 at ¶¶ 69, 77. Accepting Singer's allegations as true, it is plausible that Pace's time-shaving policy led to his being undercompensated for working more than forty hours a week during at least some weeks in the relevant time frame.

Pressing the opposite result, Defendants contend that Singer's allegations are insufficiently developed to satisfy Rule 8(a). Doc. 21 at 4-5. In support, Defendants cite *Hughes*, 2016 WL 454348, at *5, where the plaintiffs "offer[ed] no factual detail regarding overtime hours worked, monies earned, or monies purportedly due," and *Cho v. GCR Corp.*, 2013 WL 675066, at *2 (N.D. Ill. Feb. 22, 2013), where the plaintiffs "[did] not allege any

supporting facts—such as when they worked for Defendants, what they did for Defendants, how many hours they worked, or what, if anything, they were paid." Singer's allegations are substantially more developed than those dismissed in *Hughes* and *Cho*, as his complaint identifies when he first started working for Pace, Doc. 2 at ¶ 5; the job he held, *ibid.*; the hours he worked, *id.* at ¶¶ 69, 77; what he was paid, *id.* at ¶ 45; and what he is owed, *id.* at ¶ 49. Those allegations are sufficient to survive dismissal under Rule 12(b)(6).

Defendants next contend that the allegedly unpaid overtime work is "insignificant or *de minimis*." Doc. 21 at 6. In support, Defendants assert that Singer alleges that he worked on average only six minutes of uncompensated overtime per day; they reach that figure by taking the approximate total alleged underpayment ($1,000), dividing it by his hourly rate ($21.57), and then dividing that by the maximum number of days Singer could have worked in the two-year limitations period, assuming twenty work days per month. *Id.* at 7 & n.2.

"The *de minimis* doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir. 2011). The doctrine's animating purpose is "'the practical administrative difficulty of recording small amounts of time for payroll purposes.'" *Ibid.* (quoting *Lindow v. United States*, 738 F.2d 1057, 1062 (9th Cir. 1984)); *see also* 29 C.F.R. § 785.47 ("In recording working time under the [FLSA], insubstantial or insignificant periods of time beyond the scheduled working hours, *which cannot as a practical administrative matter be precisely recorded for payroll purposes*, may be disregarded. The courts have held that such trifles are *de minimis*.") (emphasis added). Thus, "[w]hen evaluating whether work performed by an employee is *de minimis*, courts typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording additional

5

time, the regularity with which the additional work is performed, and the aggregate amount of compensable time." *Kellar*, 664 F.3d at 176.

Singer alleges that Pace's time-shaving policy required bus operators to specify—in writing, on designated pink slips—the amount of time they worked in excess of the time it allotted for their routes. Doc. 2 at ¶¶ 46-48. As a result, even if the first *Kellar* factor—the amount of time drivers spent performing uncompensated overtime work—weighs in Defendants' favor, the pink slip system eliminated any administrative difficulties Defendants otherwise would have had in tracking drivers' allegedly uncompensated overtime work, so the second *Kellar* factor strongly favors Singer. The third and fourth factors also tip in his favor, as Singer alleges that he regularly worked overtime and filled out pink slips, and that Pace failed to pay him over $1,000 in overtime wages. *Id*. at ¶¶ 46-49. Accordingly, Singer's § 207(a)(1) claim cannot be dismissed under the *de minimis* doctrine, at least on the pleadings. *See Kellar*, 664 F.3d at 176-77 ("Since Kellar testified that she typically performed the same kinds of activities every day, it would have been possible to compute how much time Kellar spent on compensable activities."); *Blakes v. Ill. Bell Tel. Co.*, 77 F. Supp. 3d 776, 787 (N.D. Ill. 2015) (in holding that post-shift work of less than ten minutes per day was not *de minimis*, noting that "there is minimal administrative difficulty in recording the amount of additional time worked because [the employer's time-keeping software] records when timesheets are submitted and keeps track of each technician's scheduled shifts").

Given the parallels between the FLSA and the IMWL, the same analysis applies to Singer's IMWL claims, and the same result obtains. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010) ("The overtime provision of the [IMWL] is parallel to that of the FLSA, and Illinois courts apply the same principles … to the state provision.")

(citation omitted); *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993) (same); *Kerbes v. Raceway Assocs., LLC*, 961 N.E.2d 865, 870 (Ill. App. 2011) ("[I]n light of their substantial similarities, provisions of the FLSA and interpretations of that legislation can be considered in applying the [IMWL]."); *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. 1987) (holding that because the IMWL "parallels" the FLSA, "[t]he same analysis which applies to a violation of the FLSA applies to State law"). Thus, for the reasons already given, Singer's claim that he was not paid Illinois's $8.25 minimum wage, *see* 820 ILCS 105/4(a)(1), fails, but his claim that he was not compensated for overtime work, *see* 820 ILCS 105/4a(1), survives.

## II. IWPCA Claim

The IWPCA requires an employer "at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period," 820 ILCS 115/3, with the term "wages" defined as "any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation," 820 ILCS 115/2 (emphasis added). As the statutory text demands, "to state a claim under the IWPCA, [employees] are required to demonstrate that they are owed compensation from defendants pursuant to an employment agreement." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016); *see also Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986) (holding that "[t]he only thing [the IWPCA] requires is that the employer honor his contract"). In consequence, unlike the FLSA or the IMWL, "the IWPCA provides no substantive relief beyond what the underlying employment contract requires. In other words, the IWPCA exists to hold the employer to his promise under the employment agreement[.]" *Enger*, 812 F.3d at 570; *see also Barker v. Quick Test, Inc.*, 2016 WL 1019708, at *11 (N.D. Ill. Mar. 15, 2016) (same) (citing cases).

Singer concedes that the employment contract whose terms he seeks to enforce under the IWPCA is the collective bargaining agreement ("CBA") between Pace and his union. Doc. 2 at ¶ 65; Doc. 25 at 8. Singer further concedes that his IWPCA claim depends on interpreting the CBA provision requiring that "all employees shall be paid for all time during which they are required by Pace North Shore to perform any duties." Doc. 25 at 8. Because Singer's IWPCA claim is "'founded directly on [a] right[] created by [the] collective-bargaining agreement[],'" it is completely preempted by section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). *In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 286 (7th Cir. 2001) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *see also Baker v. Kingsley*, 387 F.3d 649, 657 (7th Cir. 2004) ("To determine whether a state-law claim is preempted, we must look at the legal character of the claim: a question of state law, entirely independent of any understanding embodied in the collective bargaining agreement, may go forward as a state-law claim; whereas a claim, the resolution of which is sufficiently dependent on an interpretation of the CBA, will be preempted.") (internal quotation marks and citation omitted). And being completely preempted by section 301 of the LMRA, the claim is deemed to be a section 301 claim. *See Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 800 (7th Cir. 2013) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.") (internal quotation marks omitted)

Defendants submit that because his IWPCA claim is, in fact, a section 301 claim under the LMRA, Singer can proceed only if he plausibly alleges that he exhausted the CBA's three-tier grievance procedure, Doc. 27-1 at 2-3. *See Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 501 (7th Cir. 1996) ("Federal law governing § 301 claims also includes a general

8

requirement that employees must exhaust grievance and arbitration remedies provided in a collective bargaining agreement before filing suit."). Although failure to exhaust is "normally considered to be an affirmative defense" and thus ordinarily cannot ground a Rule 12(b)(6) motion, *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006) (exhaustion generally); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 n.2 (2d Cir. 1988) ("Failure to exhaust union grievance procedures is an affirmative defense, not a jurisdictional bar.") (citation omitted), Singer does not make this argument, and so forfeits it for purposes of this motion. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted).

Nor does Singer contend that he satisfied the CBA's exhaustion requirement, as his complaint does not allege that he initiated even the first step of the grievance procedure by writing to his "Superintendent or designee." Doc. 27-3 at 2-3. Singer alleges only that he informally raised his concerns about underpayment with Pace management, who told him "something to the effect of, 'our records are right and you're wrong,' declining [his] request to see [his] time sheets." Doc. 2 at ¶ 64; *see also* Doc. 25 at 8-9 (contending that Singer's "early and initial attempts to engage in an administrative remedy were immediately quashed"). That does not satisfy the first step of the grievance procedure.

Instead, Singer attempts to invoke the futility exception to section 301's exhaustion requirement. *See Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 715 (7th Cir. 2013) ("Generally, an employee must exhaust the CBA's grievance procedures before pursuing judicial remedies; however, an employee may be excused from doing so if: (1) resorting to the grievance

9

procedure would be futile … .") (emphasis omitted) (internal quotation marks omitted); *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 616 (7th Cir. 2001) (same). In support, Singer points to two conversations with union stewards in which he was told that pursuing a grievance would be futile. Doc. 25 at 9. But the stewards' skepticism about his likelihood of success is insufficient to trigger the futility exception. *See McLeod*, 258 F.3d at 617 (holding that the plaintiffs' failure to exhaust could not be excused "because [their] 'mere unsupported assertion of futility was insufficient to raise the issue properly'") (quoting *Douglas v. Am. Info. Techs., Corp.*, 877 F.2d 565, 574 (7th Cir. 1989)); *Hammer v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 178 F.3d 856, 858 (7th Cir. 1999) ("[A] plaintiff must show that union hostility is so pervasive that it infects every step of the internal appeals process."); *Romano v. Bd. of Educ. for Bloom Twp. High Sch. Dist. #206,* 2016 WL 2344581, at *4 (N.D. Ill. May 4, 2016) (holding that a plaintiff asserting futility "'must put the grievance procedure to the test'") (quoting *Perry v. Midstates Indep. Union & Krooswyk Trucking & Excavating*, 20 F. App'x 527, 531 (7th Cir. 2001)).

Because Singer's IWPCA claim is preempted by section 301 of the LMRA and thus is actually a section 301 claim, because he did not exhaust the CBA's grievance procedure, and because his allegations do not allow him to invoke the futility exception to the exhaustion requirement, the claim is dismissed.

## Conclusion

Defendants' motion is granted in part and denied in part. Singer may proceed with his FLSA and IMWL overtime claims, but his FLSA and IMWL minimum wage claims and his IWPCA claim are dismissed. The dismissal of those claims is without prejudice. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015)

10

("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed."). Singer has until September 7, 2018 to file an amended complaint that attempts to replead the dismissed claims. If he does not do so, the dismissal of those claims will convert automatically to a dismissal with prejudice.

August 17, 2018

_____
United States District Judge