UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD SINGER, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) 18 C 199 ) ) Judge Gary Feinerman |
| vs. | ) ) |
| PACE SUBURBAN BUS SERVICE, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Richard Singer filed this putative class and collective action against Pace Suburban Bus Service and Regional Transportation Authority ("RTA"), bringing minimum wage and overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1 *et seq.*, and a failure to pay contractual wages claim under the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/1 *et seq.* Doc. 2. Defendants moved to dismiss, Doc. 21, and the court granted the motion in part, dismissing without prejudice the IWPCA claim and the FLSA and IMWL minimum wage claims, Docs. 37-38 (reported at 338 F. Supp. 3d 791 (N.D. Ill. 2018)). Singer repleaded, alleging FLSA and IMWL minimum wage and overtime claims and a *quantum meruit* claim. Doc. 61. Defendants again moved to dismiss, Doc. 63, and the court granted the motion in part, dismissing all claims against RTA, the FLSA and IMWL minimum wage claims against Pace, and the *quantum meruit* claim against Pace to the extent it sought recovery other than for regular, non-overtime wages, Doc. 74. Pace now moves for summary judgment on the remaining claims: the FLSA and IMWL overtime claims, and the *quantum meruit* unpaid regular wage claim. Doc. 82. The motion is denied.

1

**Background**

The court sets forth the facts as favorably to Singer as the record and Local Rule 56.1 permit. *See Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). At this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Gates v. Bd. of Educ. of Chi.*, 916 F.3d 631, 633 (7th Cir. 2019).

Singer is a bus operator employed by Pace. Doc. 99 at ¶ 41. He reported working 37-38 hours per week in 2015, over 41 hours per week in 2016, and about 45 hours per week in 2017. *Id*. at ¶¶ 45-46. He was assigned exclusively to the North Shore Garage at all relevant times. *Id*. at ¶ 42.

At the start of each run, Pace bus operators receive a trip sheet that they turn in to the dispatch office at day's end. *Id*. at ¶ 20. Trip sheets set forth how long an operator's runs should take and serve as a record for when the operator punches in and out. *Id*. at ¶¶ 14, 20. Singer would punch in at the beginning of his work day at the North Shore Garage, which has a time clock at the dispatcher's window. *Id*. at ¶¶ 47-48. If there was no time clock at the location where he punched out, Singer would use his watch to determine the punch out time. *Id*. at ¶ 50.

All Pace buses at the North Shore Garage have a GPS-based location tracking system called the Intelligent Bus System ("IBS"). *Id*. at ¶ 15. The IBS records the bus's location, the time the bus was at that location, and the time the engine was turned on and off. *Ibid*. Singer did not use the IBS to record his punch out time because shutting off the bus's engine would turn off the IBS and he had to perform other work tasks after shutting off the engine. *Id*. at ¶ 51. In addition, Singer experienced the IBS as unreliable, as it frequently would indicate that he had completed his route prior to his return to the North Shore Garage. Doc. 103 at ¶¶ 17-18. (Singer's assertions regarding his experiences with the IBS are not, as Pace submits, "the product

of hearsay, speculation and conclusions of [Singer] not supported by admissible evidence," *ibid*., as Singer supports his assertions with his declaration and deposition testimony.)

If a bus operator at the North Shore Garage works longer than the expected time set forth on the trip sheet, he must complete a pay exception slip—called a "pink slip"—which details the amount of and reason for the excess time. Doc. 99 at ¶ 23; Doc. 103 at ¶ 1. A supervisor then reviews the excess time and, if the time is approved, initials it. Doc. 103 at ¶ 2. Approximately one hundred times over a three-year period, Singer's handwritten pink slip times were crossed out and replaced with shorter times. Doc. 99 at ¶¶ 55, 66. Singer does not know why Pace subtracted time from his pink slips. *Id*. at ¶ 64. The subtractions resulted in unpaid wages of between $500 and $600. *Id*. at ¶¶ 67, 69; Doc. 103 at ¶ 3.

## Discussion

As noted, Singer's remaining claims are: (1) he worked overtime for which he was not paid, in violation of the FLSA and the IMWL; and (2) he was not paid for all his regular time and is entitled to payment under the *quantum meruit* doctrine.

### I.   FLSA and IMWL Overtime Claims

The FLSA requires employers to pay overtime "at a rate not less than one and one-half times" their regular hourly wage. 29 U.S.C. § 207(a)(1); *see DeKeyser v. Thyssenkrupp Waupaca, Inc.*, 735 F.3d 568, 570 (7th Cir. 2013). "Under the FLSA, employees are entitled to overtime pay for any hours worked over forty hours per week … ." *Blanchar v. Standard Ins. Co.*, 736 F.3d 753, 756 (7th Cir. 2013).

Pace seeks summary judgment on the ground that the record would not allow a reasonable jury to find that Singer worked compensable overtime for which he was not paid. Doc. 83 at 6-9. Citing *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010), Pace maintains that Singer has not "produce[d] sufficient evidence to show the amount and extent of

3

that [compensable] work as a matter of just and reasonable inference." Doc. 83 at 6 (internal quotation marks omitted). In *Turner*, however, the plaintiff adduced no evidence as to the amount of overtime pay he was denied, and instead simply disputed the accuracy of his employer's records. *Turner*, 595 F.3d at 690-91 & n.8. Here, by contrast, Singer adduces his handwritten pink slips as a record of the compensable time he worked, and he confirmed the accuracy of those pink slips through his declaration and deposition testimony. Doc. 99 at ¶¶ 55, 66-67 (citing Doc. 100 at ¶ 11; Doc. 97-2 at 70:18-71:12, 139:14-20); Doc. 103 at ¶¶ 3, 6 (citing Doc. 97-2 at 144:16-25, 187:10-11; Doc. 100 at ¶ 9). Moreover, and contrary to Pace's submission, Doc. 83 at 7-8, Singer may use his own declaration and deposition testimony to create a material factual dispute as to whether Pace paid him for all the compensable time he worked. *See Hill v. Tangherlini*, 724 F.3d 965, 967 & n.1 (7th Cir. 2013) (overruling cases suggesting that a plaintiff's "self-serving" testimony is insufficient to create a genuine factual dispute at summary judgment); *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 175 (7th Cir. 2011) ("Absent a finding, not made here, that the usual requirements for evidence at the summary judgment stage were not met, evidence presented in a 'self-serving' affidavit or deposition is enough to thwart a summary judgment motion. [The plaintiff's] deposition testimony created a factual dispute, and the court was not free to resolve it in [the defendant employer's] favor.") (internal citation omitted).

Pace argues in the alternative that any uncompensated overtime work Singer performed was *de minimis* and thus not covered by the FLSA. Doc. 83 at 9-12. "The *de minimis* doctrine allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute." *Kellar*, 664 F.3d at 176. The doctrine's purpose is to account for "the practical administrative difficulty of recording small

4

amounts of time for payroll purposes." *Ibid*. (internal quotation marks omitted). As the governing regulation explains:

> In recording working time under the [FLSA], insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis. This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, *and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part*, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him."

29 C.F.R. § 785.47 (emphasis added) (internal citation omitted). Thus, "[w]hen evaluating whether work performed by an employee is *de minimis*, courts typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording additional time, the regularity with which the additional work is performed, and the aggregate amount of compensable time." *Kellar*, 664 F.3d at 176.

Pace required bus operators to use the pink slip system to record the amount of excess time they worked and the reason for the excess. Doc. 99 at ¶ 23. As a result, even if the first *de minimis* factor articulated by *Kellar*—the amount of time Singer spent performing uncompensated overtime work—weighs in Pace's favor, the pink slip system eliminated any administrative difficulties that Pace faced in tracking his overtime work, so the second *Kellar* factor strongly favors Singer. The third and fourth factors also favor Singer, as he adduces evidence that Pace improperly "shaved" his pink slip time on approximately one hundred occasions and that those reductions resulted in his being deprived of $500-$600 in rightfully earned pay. Doc. 99 at ¶¶ 66-67, 69. It follows that Pace cannot prevail at summary judgment under the *de minimis* doctrine. *See Kellar*, 664 F.3d at 176-77 ("Since [the plaintiff] testified that she typically performed the same kinds of activities every day, it would have been possible

5

to compute how much time [she] spent on compensable activities."); *Blakes v. Ill. Bell Tel. Co.*, 77 F. Supp. 3d 776, 787 (N.D. Ill. 2015) (in holding that a reasonable jury could conclude that post-shift work of less than ten minutes per day was not *de minimis*, reasoning that "there is minimal administrative difficulty in recording the amount of additional time worked because [the employer's time-keeping software] records when timesheets are submitted and keeps track of each technician's scheduled shifts").

Given the parallels between the FLSA and the IMWL, the same analysis applies to Singer's IMWL overtime claim, and the same result obtains. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 672 n.3 (7th Cir. 2010) ("The overtime provision of the [IMWL] is parallel to that of the FLSA, and Illinois courts apply the same principles … to the state provision.") (citation omitted); *Condo v. Sysco Corp.*, 1 F.3d 599, 601 n.3 (7th Cir. 1993) (similar); *Kerbes v. Raceway Assocs., LLC*, 961 N.E.2d 865, 870 (Ill. App. 2011) ("[I]n light of their substantial similarities, provisions of the FLSA and interpretations of that legislation can be considered in applying the [IMWL]."); *Haynes v. Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. 1987) (holding that because the IMWL "parallels" the FLSA, "[t]he same analysis which applies to a violation of the FLSA applies to State law").

## II. *Quantum Meruit* Claim

"Quantum meruit is a quasi-contract doctrine that allows courts to imply the existence of a contract to prevent injustice." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012). Pace seeks summary judgment on the ground that Singer's *quantum meruit* claim is preempted by the FLSA because it alleges conduct made unlawful by the FLSA. Doc. 83 at 13-14. Because the FLSA pertains only to overtime (and the minimum wage, which is not at issue here), and because the portion of Singer's *quantum meruit* claim that survived dismissal seeks compensation only for unpaid regular time—also known as "gap time," *Davis v. Abington Mem'l*

6

*Hosp.*, 765 F.3d 236, 243-44 (3d Cir. 2014)—there is no preemption. *See Richmond v. Advanced Pain Consultants, S.C.*, 2015 WL 4971040, at *3 (N.D. Ill. Aug. 18, 2015) ("[I]f the state common law claim seeks something other than what the FLSA can provide, such as, for example, regular wages not paid at the contracted rate, the claim is not preempted.") (internal quotation marks omitted).

Pace next argues that Singer did not place it on notice of his *quantum meruit* gap time claim. Doc. 83 at 14. That argument is meritless, as the court dismissed Singer's *quantum meruit* claim only to the extent it pertained to recovery *other than* for Pace's alleged failure to pay regular, non-overtime wages—in other words, for gap time. Doc. 74.

Finally, Pace argues that Singer "has failed to present sufficient evidence for a trier of fact to conclude that he is owed any wages under a 'gap time' theory." Doc. 83 at 15. That argument fails as well, as the evidence Singer adduces to support his FLSA and IMWL overtime claims—that Pace improperly shaved the time he recorded on his pink slips—also supports his allegation that Pace failed to pay him for all the regular compensable time he worked.

**Conclusion**

Pace's summary judgment motion is denied.

December 3, 2019

_____
United States District Judge